1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BARBARA MOORE, | Case No.: 10-CV-01534-LHK |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, CHRIS ELY, an individual, and DOES 1 through 100, inclusive, | |
| Defendants. | |

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") moves for summary judgment on Plaintiff Barbara Moore's claims of fraud, breach of the implied covenant of good faith and fair dealing, and punitive damages.  The Court heard oral argument on April 28, 2011.  Having considered the arguments and submissions of the parties, the Court GRANTS Defendant's motion for summary judgment.

**I.  Background**

On January 19, 2007, Plaintiff Barbara Moore was rear-ended by an uninsured motorist while driving in Marin County, California.  Compl. ¶ 14; Traffic Collision Report, Decl. of Diana Golden in Supp. of State Farm's Motion for Summary Judgment ("Golden Decl.") Ex. 1.  Plaintiff had stopped at a light to make a right turn, and was looking left to assess oncoming traffic, when she was hit from behind by the uninsured motorist.  Golden Ex. 1.  The traffic collision report describes the accident as "minor" and notes that both drivers were able to drive away from the

1

**United States District Court**
For the Northern District of California

1    scene. *Id.* at CF 1446. State Farm also includes in its motion a photo of Plaintiff's vehicle that

2    shows little to no visible damage. Def.'s Mot. for Summary Judgment at 5; Golden Decl. Ex. 3.

3    Plaintiff reported that she hit her head against the headrest, experienced pain in the back of her

4    head, and felt aches and pains all over. Golden Decl. Ex. 1 at CF 1448; Golden Decl. Ex. 7.

5    Although she refused medical assistance at the scene, Golden Decl. Ex. 1 at CF1448, Plaintiff later

6    sought treatment for her injuries. *Id.* Ex. 7. Prior to the January 19, 2007 accident, Plaintiff had

7    already been receiving treatment for injuries related to a serious car accident that occurred in 2004

8    and left Plaintiff with a traumatic brain injury, as well as pain in her hips, back, neck, and

9    shoulders. *Id.* Ex. 37 at 2, 11. In her opposition brief, Plaintiff represents that State Farm knew of

10   the 2004 car accident and Plaintiff's resulting brain injury because State Farm covered the medical

11   bills caused by the 2004 accident. Pl.'s Opp'n at 1-2.

12         At the time of the January 19, 2007 accident, Plaintiff was covered by an automobile

13   insurance policy issued by State Farm that included both uninsured motorist coverage ("UM") and

14   medical payments coverage ("MPC").[1] Golden Decl. Ex. 40 at CP002. Plaintiff's MPC policy

15   covered reasonable and necessary medical expenses caused by an accident for up to three years

16   from the accident date.[2] Compl. ¶¶ 7-11; Golden Decl. Ex. 40 at CP019. Plaintiff reported the

17   accident to her State Farm agent on January 23, 2007, and State Farm made contact with Plaintiff

18   on the next day, January 24, 2007. Golden Decl. Ex. 4-5. Shortly thereafter, on February 5, 2007,

19   State Farm requested that Plaintiff sign an Authorization for Release of Information, provide a list

20   of her medical providers, and forward itemized bills for consideration. Golden Decl. Ex 6.

21   Plaintiff did not provide the signed Authorization until September 11, 2007, after State Farm sent

22   additional letters requesting the Authorization in May and September. *See id.* Ex. 7-8.

23   Nonetheless, State Farm began making payments for Plaintiff's medical expenses promptly after

---

[1] This action addresses only Plaintiff's MPC claims. State Farm's handling of her uninsured
motorist claim is not at issue.

[2] The policy states that State Farm "will pay reasonable medical expenses incurred, for *bodily
injury* caused by accident, for services furnished within three years of the date of the accident."
Golden Decl. Ex. 40 at CP019. To be covered under the policy, such services must also be
"necessary." *Id.* Medical services are considered necessary "only if the services are rendered by a
medical provider within the legally authorized scope of the provider's practice and are essential in
achieving maximum medical improvement for the *bodily injury* sustained in the accident." *Id.*

2

1    the accident.  On February 15, 2007, State Farm made its first payment under Plaintiff's MPC

2    policy in the amount of $220 for treatment by a doctor of osteopathy.  *Id.* Ex. 10 at CF2280.

3    Between February 15, 2007, and March 6, 2008, State Farm made twenty-four payments under

4    Plaintiff's MPC policy, covering bills totaling approximately $5,555 for treatment by various

5    doctors of osteopathy and chiropractors.  *Id.* Ex. 10 at CF2278-CF2280.

6         It seems that after August 20, 2007, State Farm went several months without receiving any

7    further bills from Plaintiff or her providers.[3]  *See id.* Ex. 10 at CF2279 (showing no bills received

8    between August 20, 2007 and November 19, 2007).  On October 23, 2007, State Farm employee

9    Kathy Mitchell performed a file review and closed MPC handling because no additional medical

10   bills had been received.  *See* Decl. of Michael M. Shea, Jr., In Opp'n to Mot. for Summary

11   Adjudication ("Shea Decl.") Ex. C at CF0073 ("log #148 indicates that provider has released

12   Barbara.  No additional med bills rec'd.  Closing MPC handling at this time.").  On November 21,

13   2007, however, Sharon Shlaufman reopened the MPC claim after receiving chart notes and noting

14   that a new bill had been received from provider Dr. Holland.[4]  *Id.* at CF0072.  At that time, Ms.

15   Shlaufman also requested that Dr. Holland address the apparent gap in Plaintiff's treatments.  *Id.*

16   On December 16, 2007, Kathy Mitchell entered a claim note in Plaintiff's file stating that Plaintiff

17   appeared to have started treatment again.  *Id.* at CF0071.  She requested a review of Plaintiff's

18   medical report and asked whether the newly submitted bill could be paid.  *Id.*  On January 2, 2008,

19   Kristi Love approved payment of the pending bill, but noted that Plaintiff's treatments were

20   already under review in connection with her UM claim and an independent medical examination

21   might be necessary.  *Id.* at CF0070.  At that time, Plaintiff's UM claim handler had noted

22   Plaintiff's prior head injury and residual symptoms from the 2004 accident, and had been

---

[3] At the motion hearing, after much questioning, Plaintiff's counsel finally identified claim notes dated September 5, 2007 and October 3, 2007 which indicate that State Farm had received "tracer bills" from Dr. Holland for May and June.  Shea Decl. Ex. C at CF0079, CF0081.  These "tracer bills" are not reflected in the Payment Log provided by State Farm, which does not list any bills received in September or October 2007.  Plaintiff did not raise this issue in her briefing on the motion and has not defined "tracer bill."

[4] Plaintiff makes much of the fact that State Farm failed to note the October 23, 2007 closure of MPC handling in its opening brief.  However, Plaintiff herself failed to note that the MPC claim was actually reopened on November 21, 2007, even though the reopening is documented in the State Farm claims file that Plaintiff submitted in support of her opposition brief.

3

United States District Court
For the Northern District of California

1  attempting to contact Plaintiff to discuss the specifics of her injuries and treatment providers.  *Id.* at

2  CF0072-CF0071.  In a bill research entry on Plaintiff's MPC claim dated January 28, 2008, State

3  Farm employee Arlene Cabuloy also noted the existence of prior injuries associated with Plaintiff's

4  previous car accidents.[5]  *Id.* at CF0069.

5         On January 29, 2008, Kristi Love entered a claim note indicating that she had reviewed

6  Plaintiff's MPC claim and found that reasonableness and necessity, as well as causation, were at

7  issue.  *Id.* at CF0068.  Love approved payment of current bills, but instructed her co-workers not to

8  pay any additional bills pending investigation of Plaintiff's claim.  *See id.* ("Rev'd: note R & N as

9  well as causation at issue.  However CP O.K. to pay current bills – but DO NOT PAY ANY

10  additional bills after this date as we are investigating.").  Love also requested any and all medical

11  records from all of the medical providers listed in Plaintiff's file.  *Id.*  On February 4, 2008, State

12  Farm sent a letter to Plaintiff that stated: "At this time, we cannot accept or deny any payment for

13  your medical expenses, as we need to investigate to determine whether or not continued treatment

14  is reasonable, necessary and caused by the accident of January 19, 2007."  Shea Decl. Ex. F.  The

15  letter advised Plaintiff that she might be required to submit to an examination by a physician of

16  State Farm's choice.  *Id.*

17         On March 10, 2008, after reviewing Plaintiff's medical records, *see* Shea Decl. Ex. C at

18  CF0064-66 (indicating review of records by Kristi Love), Kristi Love entered a claim note

19  indicating that an independent medical examination ("IME") of Plaintiff should be scheduled.

20  Shea Decl. Ex. C at CF0063; Golden Decl. Ex. 12.  Love noted that the January 19, 2007 accident

21  was "moderate/minor," but that Plaintiff had already undergone a year of treatment with at least 10

22  different providers.  *Id.*  Love also noted that Plaintiff had been involved in five prior motor vehicle

23  accidents, most recently in 2005, and had preexisting conditions.  *Id.*  Apparently based on these

24  facts in Plaintiff's medical records, Ms. Love found "causation questionable."  *Id.*  Following the

25

26

27

28

---

[5] Indeed, in her opposition brief, Plaintiff emphasizes State Farm's knowledge of the 2004 car accident and her resulting injuries.  Plaintiff notes that the 2004 car accident and brain injury first appears in the 2007 claims file on September 13, 2007, and claims that there are 14 references to the 2004 brain injury between September 2007 and October 2008.  Pl.'s Opp'n at 1-2.

4

1    March 10, 2008 claim note, Ms. Love continued to gather and review Plaintiff's medical records

2    and to identify additional providers.  *See* Shea Decl. Ex. C at CF0056-CF0062.

3           On May 7, 2008, Love called Plaintiff and left a message informing her that State Farm

4    would be setting up an IME for her through Medical Consultant Services ("MCS").  Golden Decl.

5    Ex. 13; Shea Decl. Ex. C at CF0056.  On May 19, 2007, MCS mailed Plaintiff a notice advising

6    her that an IME had been scheduled for June 3, 2008, at 10 a.m.  Golden Decl. Ex. 15.  At 4:30

7    p.m. on the day of the exam, Plaintiff called Medical Consultant Services to tell them that she

8    could not make the IME appointment.  *Id.* Ex. 16.  Plaintiff indicated that she could make an

9    appointment two days later, but the doctor of osteopathy was not available at that time.  *Id.*

10   Instead, State Farm asked MCS to reschedule an appointment with a chiropractor.[6]  MCS

11   attempted to contact Plaintiff to reschedule the IME, but had difficulty reaching her and told Love

12   that Plaintiff would not return its phone calls.  *Id.* Ex. 17.  MCS scheduled a tentative appointment

13   for June 18, 2008, but had been unable to confirm the appointment with Plaintiff.  *Id.*  State Farm

14   also called Plaintiff to advise her of the appointment.  *Id.*  On June 17, 2008, when Plaintiff had not

15   returned any of the calls from MCS or State Farm, MCS cancelled the appointment in order to

16   avoid cancellation charges.  *Id.* Ex. 18.  On the same day, State Farm sent Plaintiff a letter advising

17   her that she had a duty to cooperate with its investigation and that a failure to do so could result in

18   a delay or denial of coverage.[7]  *Id.* Ex. 19.  The letter requested that Plaintiff contact MCS within

19   30 days to set up an IME.  *Id.*

20          To further its investigation, State Farm then retained Biomechanical Consultants of

21   California to conduct a biomechanical analysis of Plaintiff's accident and provide an independent

22   opinion as to whether the accident was likely to have caused the injuries claimed by Plaintiff.  *Id.*

23   Ex. 20.  Biomechanical Consultants evaluated the medical records, police report, and photographs

24   _____

25   [6] There seems to have been some disagreement at State Farm as to whether Plaintiff should be
     examined by a doctor of osteopathy or a chiropractor, since she had been treated by both.

26   Ultimately, Plaintiff's IME was conducted by a doctor of osteopathy.  The uncertainty regarding
     the type of doctor to use does not seem to have affected State Farm's investigation or caused delay

27   in the resolution of Plaintiff's claim.

28   [7] Plaintiff's policy requires her to "be examined by physicians chosen and paid by [State Farm] as
     often as [State Farm] may reasonably require."  Golden Decl. Ex. 40 at CP015.

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

of Plaintiff's vehicle and provided its conclusions to State Farm on June 13, 2008.  The consultants concluded that the accident could have caused Plaintiff's cervical sprain/strain and trapezius strain, but that it was unlikely to have caused Plaintiff's closed head injury, post-concussive syndrome, and other head, thoracic, and lumbar injuries.  *Id.* Ex. 21 at 1.  Biomechanical Consultants also concluded that it was reasonable for Plaintiff to have sustained "short-term soft tissue discomfort" of the cervical and lumbar region.  *Id.*

By July 3, 2008, State Farm and MCS still had not heard from Plaintiff regarding the IME. *Id.* Ex. 22-23.  State Farm mailed Plaintiff a letter containing the Biomedical Consultants report and again advised her that no further payments could be made until Plaintiff cooperated with the IME.  *Id.* Ex. 23.  On August 11, 2008, Kristi Love entered a claim note indicating that Plaintiff still had not responded to MCS's calls or set a new date for the IME.  *Id.* Ex. 25.  In September 2008, due to Plaintiff's failure to cooperate, State Farm decided to forego the IME and proceed with a medical records review.  *Id.* Ex. 26-27.  Dr. Moses Jacob conducted a review of Plaintiff's medical records, police report, vehicle photographs, and the biomechanical analysis.  He noted that prior to the January 19, 2007 accident, Plaintiff had been treated for injuries related to a serious car accident that occurred in 2004.  *Id.* Ex. 28 at 5, 10.  Plaintiff had been receiving ongoing treatment for those injuries at the time of the 2007 accident, and in fact had been seen by one provider on January 11, 2007, just 8 days before the 2007 accident.  *Id.* at 5, 10.  Based on the medical records and other information provided, Dr. Jacob concluded that Plaintiff's claimed symptoms were "in all medical probability" directed to the 2004 accident.  *Id.* at 10.  He found that the 2007 accident exacerbated Plaintiff's preexisting symptoms, but that "[a]t best, she would have required approximately four to eight weeks of treatment regarding the latest episode."  *Id.*  In support of this finding, Dr. Jacob noted that at least one of Plaintiff's clinicians had stated that by the end of February 2007, Plaintiff's symptoms were essentially the same as those that predated the 2007 accident.  *Id.*  Accordingly, Dr. Jacob concluded that "the January 2007 episode was at best a slight event which may have resulted in the need of approximately 4-8 weeks of conservative treatment for a soft tissue strain."  *Id.* at 11.  Based on Dr. Jacob's report, State Farm issued a letter to Plaintiff, dated October 30, 2008, indicating that it could not make any further payments under her

6

MPC policy.  *See id.* Ex. 29 ("As the treatment we have paid to date exceeds the recommendation of Dr. Jacob, we will no longer be able to consider further payments under your Medical Payments Coverage.").

On December 17, 2008, Plaintiff contacted Diana Golden to complain that she felt harassed and pressured to attend an IME, and stated that she did not agree to attend an IME.  *Id.* Ex. 30.  She also informed Golden that she continued to receive treatment due to the 2007 accident.  *Id.*  Golden told Plaintiff that State Farm was unaware of her continued treatment and advised her that they would still need an IME to evaluate her claims.  *Id.*  The next day, Golden sent Plaintiff a letter stating that in light of the new information regarding her continued treatment, State Farm would require an IME to evaluate her claim.  *Id.* Ex. 31.  By February 12, 2009, however, Plaintiff still had not agreed to undergo an IME.  *Id.* Ex. 32.  State Farm advised Plaintiff that it was placing her file in inactive status, but that she could reactivate her claim if she decided to submit to an IME.  *Id.*

Finally, on June 18, 2009, over a year after State Farm first asked Plaintiff to submit to an IME, Plaintiff called State Farm and indicated that she wanted to attend an IME.  *Id.* Ex. 33.  The IME was conducted on October 26, 2009, by Dr. Jeanne L. Crump, Doctor of Osteopathy, who produced an IME report dated November 23, 2009.  *Id.* Ex. 37 at 1.  Dr. Crump confirmed that Plaintiff had preexisting cognitive and physical symptoms related to the 2004 accident for which she was still seeking treatment just days before the 2007 accident.  *Id.* at 11.  As to Plaintiff's cognitive injuries, Dr. Crump found that Plaintiff's medical records presented "differing opinions about the impact of the 2007 accident on her ongoing brain problems."  *Id.* at 10-11.  While at least one of Plaintiff's doctors had initially viewed the impact of the 2007 accident as temporary, Dr. Crump found that "[o]ver time, the picture is less clear," and ultimately could not determine whether the 2007 accident had a permanent or long-term effect on Plaintiff's cognitive symptoms.  *Id.* at 11, 14.  As to Plaintiff's somatic complaints, Dr. Crump found that Plaintiff experienced "acute symptoms" related to the 2007 accident for about 12 weeks after the accident.  *Id.* at 11-12.  While she found that most of Plaintiff's injuries from the 2007 accident did not have a long-term effect, *id.* at 11, Dr. Crump did find that Plaintiff's occipital neck pain continued to the present and

7

1    had not reached pre-injury status. *Id.* at 11, 14.  Accordingly, she concluded that continued

2    treatment of Plaintiff's occipital neck pain and post-concussive symptoms was necessary to achieve

3    maximum medical improvement from the 2007 accident. *Id.* at 12.

4           On December 10, 2009, State Farm advised Plaintiff of the IME results, informed her that it

5    would accept bills for treatment incurred until January 19, 2010 (the three-year limit on the policy),

6    and instructed her to submit bills for the treatment of her accident-related injuries. *Id.* Ex. 38.

7    Between December 10, 2009, and October 8, 2010, State Farm made 83 additional payments for

8    treatments Plaintiff received during the three-year policy period. *Id.* Ex. 10.  In addition, during

9    the course of this litigation, State Farm discovered five bills submitted by Plaintiff on December

10   31, 2009, and one bill submitted on March 31, 2009, which it had overlooked and mistakenly failed

11   to pay.[8]  Decl. of David Ortiz in Supp. of State Farm's Mot. for Summary Judgment ("Ortiz Decl.")

12   ¶¶ 5-6.  On March 24, 2011, State Farm issued payment for these overlooked bills, plus 10%

13   interest. *Id.* ¶¶ 5-6.  State Farm believes, and Plaintiff appears to agree, that it has now paid all

14   properly submitted bills for medical services caused by the 2007 accident and covered under

15   Plaintiff's MPC policy. *Id.* ¶ 8.  State Farm states that it has now paid in excess of $25,000 under

16   Plaintiff's MPC policy. *Id.*

17          On January 14, 2010, after State Farm advised her that it would pay for three years of

18   treatment, Plaintiff filed a Complaint in the Santa Clara County Superior Court asserting claims of

19   breach of the covenant of good faith and fair dealing, fraud, and punitive damages.[9]  State Farm

20   removed the action to federal court on April 9, 2010.  State Farm now moves for summary

21

22   _____

[8] The five bills submitted on December 31, 2009 were submitted with approximately 82 pages of

23   documents that contained medical records, as well as bills that had already been received and paid,
     and were apparently mislabeled as records.  Ortiz Decl. ¶ 5.  The sixth bill was submitted on March

24   31, 2009, at a time when Plaintiff was refusing to submit to an IME, and State Farm had denied
     further benefits. *Id.* ¶ 6.  After Plaintiff submitted to the IME and State Farm resumed payments,

25   State Farm paid a portion of this bill, but overlooked a balance of $129.50. *Id.*  That balance has
     now been paid, with interest. *Id.*

26
     [9] Plaintiff's Complaint also names State Farm employee Chris Ely as a defendant and asserts a

27   claim for tortious interference with contract.  Defendant Ely and the claim for tortious interference
     were dismissed on June 10, 2010. *See* Order Granting Defendants' State Farm Mutual Automobile

28   Insurance Company and Chris Ely's Motion to Drop and Dismiss Chris Ely and Dismiss Tortious
     Interference with Contract Cause of Action, ECF No. 14.

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    judgment as to Plaintiff's entire action, or, in the alternative, summary adjudication of specific

2    issues in the case.

3    **II. Legal Standard**

4        Summary judgment should be granted if there is no genuine issue of material fact and the

5    movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*,

6    477 U.S. 317, 321 (1986).  Material facts are those which may affect the outcome of the case, and a

7    dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of

8    fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9    (1986).  On a motion for summary judgment, the Court draws all reasonable inferences that may be

10   taken from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita*

11   *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "[T]he district court does

12   not assess credibility or weigh the evidence, but simply determines whether there is a genuine

13   factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-560 (2006).

14       The moving party has the initial burden of production for showing the absence of any

15   material fact.  *Celotex*, 477 U.S. at 331.  The moving party can satisfy this burden in two ways.

16   "First the moving party may submit affirmative evidence that negates an essential element of the

17   nonmoving party's claim.  Second, the moving party may demonstrate to the Court that the

18   nonmoving party's evidence is insufficient to establish an essential element of the nonmoving

19   party's claim." *Id*.  Once the moving party has satisfied its initial burden of production, the burden

20   of proof shifts to the nonmovant to show that that there is a genuine issue of material fact.  A party

21   asserting that a fact is genuinely disputed must support that assertion by either citing to particular

22   parts of materials in the record or by showing that the materials cited by the moving party do not

23   establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c).  The nonmovant must go beyond

24   its pleadings "and by her own affidavits, or by the depositions, answers to interrogatories, and

25   admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*,

26   477 U.S. at 324 (internal quotation marks and citation omitted).

27

28

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    **III. Discussion**

2       **A.   Breach of the Implied Covenant of Good Faith and Fair Dealing**

3              In her first cause of action, Plaintiff alleges that State Farm breached the implied covenant

4    of good faith and fair dealing by withholding Medical Payment Coverage due under Plaintiff's

5    insurance policy.  Under California law, when an insurer "unreasonably and in bad faith" denies or

6    delays paying benefits due, it is subject to tort liability for breach of the implied covenant.  *Wilson*

7    *v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720, 171 P.3d 1082 (2007).  "In order to establish a

8    breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must

9    show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits

10   was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th

11   Cir. 2001).

12             An insurer is not liable for breach of the implied covenant if it denies or delays payments

13   based upon "a genuine dispute . . . as to the existence of coverage liability or the amount of the

14   insured's coverage claim."  *Chateau Chamberay Homeowners Assn. v. Associated Int'l Ins. Co.*, 90

15   Cal. App. 4th 335, 347, 108 Cal. Rptr. 2d 776 (Cal. Ct. App. 2001).  However, the genuine dispute

16   rule "does not relieve an insurer from its obligation to thoroughly and fairly investigate, process

17   and evaluate the insured's claim." *Wilson*, 42 Cal. 4th at 723.  This is because a dispute is genuine

18   "only where the insurer's position is maintained in good faith and on reasonable grounds." *Id.*

19   Thus, even in a case where benefits are ultimately found to be due, an insurer will not be liable if it

20   conducted a thorough and fair investigation, after which there remained a genuine dispute as to

21   coverage liability.  *Id.*  The genuine dispute rule does not alter the summary judgment standard.  *Id.*

22   at 724.  Accordingly, "an insurer is entitled to summary judgment based on a genuine dispute over

23   coverage or the value of the insured's claim only where the summary judgment record

24   demonstrates the absence of triable issues as to whether the disputed position upon which the

25   insurer denied the claim was reached reasonably and in good faith." *Id.*

26             **1.   State Farm's Initial Burden**

27             In this case, State Farm argues that it is entitled to summary judgment on Plaintiff's breach

28   of implied covenant claim because it acted reasonably and withheld coverage of Plaintiff's medical

10

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   treatments based on a genuine dispute over the amount of benefits owed.  The Court agrees that

2   State Farm has met its initial burden of showing the absence of any material fact regarding the

3   reasonableness of its actions and the existence of a genuine dispute as to coverage.  As described in

4   the Background section above, State Farm promptly paid Plaintiff's medical bills for

5   approximately one year following a relatively minor car accident, despite Plaintiff's repeated delay

6   in responding State Farm's requests for a signed authorization and other information.  State Farm

7   has submitted evidence showing that after questions arose concerning its liability for Plaintiff's

8   continued treatment in early 2008, it took steps to investigate her claim and subsequently asked

9   Plaintiff to submit to an IME.  Insurers have a right to investigate the basis for an insured's claim

10  using various methods.  *See Wilson*, 42 Cal. 4th at 722 (noting that insurer may ask treating

11  physician to reexamine its findings, have a physician review the insured's medical records, or have

12  the insured examined by other physicians); *West v. State Farm Fire and Cas. Co.*, 868 F.2d 348,

13  351 (9th Cir. 1989) (finding that insurer need not "pay claims at their face value on the basis of a

14  preliminary interview" and may require the insured to submit statements under oath).  In this case,

15  Plaintiff's policy explicitly required her to "be examined by physicians chosen and paid by [State

16  Farm] as often as [State Farm] may reasonably require."  Golden Decl. Ex. 40 at CP015.  Thus, it

17  was not unreasonable for State Farm to require Plaintiff to submit to an IME.

18        State Farm further submits evidence demonstrating that delay of the IME was due to

19  Plaintiff's cancellation of the first scheduled IME appointment and her repeated failure to respond

20  to phone calls and letters attempting to reschedule the examination.  *See* Golden Decl. Exs. 16-19,

21  23-26, 32.  Because it was unable to obtain an independent medical examination of Plaintiff, State

22  Farm was forced to evaluate her claims based upon the expert opinions in the biomechanical

23  analysis and medical records review it solicited in May and September 2008.  Both of these

24  analyses indicated that while Plaintiff's accident likely caused short-term injuries and exacerbated

25  her preexisting symptoms for a brief period, her continued symptoms were most likely attributable

26  to the more serious 2004 car accident, rather than the January 19, 2007 accident.  *Id.* Ex. 21 at 1

27  (concluding that the forces at play in the 2007 accident could have caused short-term soft tissue

28  discomfort and cervical and trapezius sprain/strain, but not Plaintiff's other injuries); Ex. 28 at 11

11

United States District Court
For the Northern District of California

1    (concluding that "the January 2007 episode was at best a slight event which may have resulted in

2    the need of approximately 4-8 weeks of conservative treatment for a soft tissue strain").

3           In the absence of bias in the expert's investigation, "[t]he 'genuine dispute' doctrine may be

4    applied where the insurer denies a claim based on the opinions of experts." *McCoy v. Progressive*

5    *West Ins. Co.*, 171 Cal. App. 4th 785, 793, 90 Cal. Rptr. 3d 74 (Cal. Ct. App. 2009) (quoting Fraley

6    v. Allstate Ins. Co. 81 Cal. App. 4th 1282, 1292, 97 Cal. Rptr. 2d 386 (2000)). Here, State Farm

7    has demonstrated that it denied benefits for Plaintiff's continued treatment based on the opinions of

8    two independent experts. There is no indication that these opinions were biased or unreasonable,

9    and the IME, when it finally occurred, confirmed that at least some, if not all, of Plaintiff's injuries

10   from the 2007 car accident required only short-term treatment. *See* Golden Decl. Ex. 37 at 11-12.

11   Accordingly, State Farm has shown that it denied coverage for Plaintiff's continued treatments

12   based upon a genuine dispute as to its liability for those treatments, as evidenced by the

13   conclusions of two independent experts.

14          State Farm has also presented evidence showing that it acted reasonably after it initially

15   denied Plaintiff's claim by providing her continued opportunities to submit to an IME, even after

16   she missed a scheduled appointment, failed to respond to requests to reschedule, and informed

17   State Farm that she would not agree to attend an IME. Moreover, after Plaintiff finally agreed to

18   attend an IME, and the IME report proved favorable to Plaintiff's claims, State Farm promptly

19   approved three years worth of coverage and resumed making payments. *See Shade Foods, Inc. v.*

20   *Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 880, 93 Cal. Rptr. 2d 364 (Cal.

21   Ct. App. 2000) ("The insurer's willingness to reconsider its denial of coverage and to continue an

22   investigation into a claim has been held to weigh to favor of its good faith."). Indeed, State Farm

23   has now paid over $25,000 to cover Plaintiff's medical treatments over a three-year period.

24          "An insurer's good or bad faith must be evaluated in light of the totality of the

25   circumstances surrounding its actions." *Wilson*, 42 Cal. 4th at 723. Based on all of the facts and

26   evidence put forth by State Farm, the Court finds that it has met its initial burden of showing that

27   no material fact exists regarding the reasonableness of its actions or the existence of a genuine

28

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

1    dispute over coverage liability.  The burden therefore shifts to Plaintiff  to "designate specific facts

2    showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.

### 2.  Plaintiff Fails to Show Triable Issues of Fact

4          In her opposition brief, Plaintiff does not dispute State Farm's claim that its investigation,

5    based upon the biomechanical expert report and medical records review, revealed a genuine dispute

6    as to its liability for continued coverage of Plaintiff's claims.  She does not argue that State Farm or

7    its experts ignored evidence that supported her claim, nor does she argue that the experts upon

8    which State Farm relied were unreasonable or dishonestly selected.  *See Wilson*, 42 Cal. 4th at 721

9    (insurer acts unreasonably if it "ignores evidence available to it which supports the claim" or "just

10   focus[es] on those facts which justify denial of the claim"); *Guebara*, 237 F.3d at 996 (insurer may

11   act in bad faith if it relies on biased investigation or expert).  Rather, Plaintiff attempts to raise

12   issues of material fact based upon State Farm's conduct prior to its request for an IME and the

13   subsequent expert analyses.  The Court will address each of Plaintiff's arguments in turn.

### i.  Closure of MPC handling on October 23, 2007

15         First, as previously noted, Plaintiff makes much of the fact that State Farm failed to

16   acknowledge the closure of the MPC claim that occurred on October 23, 2007, months before State

17   Farm renewed investigation of her claim or requested an IME.  Plaintiff argues that because the

18   October 23, 2007 closure decision was made without reliance on any medical evidence, a jury

19   could conclude that State Farm's decision to deny benefits was made without a reasonable basis.

20   As State Farm points out, this argument ignores the fact that State Farm initially closed Plaintiff's

21   MPC claim because it had received no new bills, and that it promptly reopened Plaintiff's MPC

22   claim on November 21, 2007, just two days after it received a new bill from one of her providers.[10]

23   Thereafter, State Farm continued to accept and pay medical bills submitted by Plaintiff until

24

---

25   [10] As noted above, at the motion hearing, Plaintiff's counsel pointed out that claim notes dated
     September 5, 2007 and October 3, 2007 indicate that State Farm received "tracer bills" from Dr.
26   Holland for May and June.  Shea Decl. Ex. C at CF0079, CF0081.  These "tracer bills" are not
     reflected in the Payment Log provided by State Farm, which does not list any bills received in
27   September or October 2007.  It is possible that these "tracer bills" constituted new or additional
     billing that should have kept the MPC claim from being closed on October 23, 2007.  However,
28   even if the October 23, 2007 closure was in error, Plaintiff has produced no evidence suggesting
     that the temporary closure of the MPC claim resulted in the delay or denial of coverage.

13

1   February 2008.  Plaintiff has produced no evidence that the temporary closure of the MPC claim on

2   October 23, 2007 resulted in the delay or denial of any payments due under the policy.  *See*

3   *Guebara*, 237 F.3d at 992 (noting that breach of implied covenant claim requires a showing that

4   benefits due under a policy were withheld).  Accordingly, Plaintiff cannot rely on the temporary

5   closure to raise a triable issue of fact.

6          Plaintiff also relies on the October 23, 2007 closure to argue that State Farm misrepresented

7   the nature of its investigatory proceedings and should therefore be liable for breach of the implied

8   covenant.  *See Guebara*, 237 F.3d at 996 (evidence that "insurer is guilty of misrepresenting the

9   nature of the investigatory proceedings" may constitute a triable issue of fact).  Plaintiff notes that

10  on October 18, 2007, State Farm employee Stacey Cook told Plaintiff that she "will check back in

11  60 days for status" of her medical treatments.  Shea Decl. Ex. C at CF0074.  Plaintiff argues that

12  this statement constituted a misrepresentation of the investigatory proceedings because rather than

13  checking back for status in 60 days, State Farm actually closed MPC handling five days later.  As

14  State Farm points out, there are at least two problems with this argument.  First, it is clear from the

15  activity log submitted by Plaintiff that Stacey Cook handled Plaintiff's uninsured motorist claim,

16  not her MPC claim.  *See* Shea Decl. Ex. C at CF0067 (note entered by Stacey Cook stating "I

17  explained I was handling her UM claim").  Thus, Cook's promise to "check back in" for status on

18  Plaintiff's uninsured motorist claim is not undermined by the temporary closure of MPC handling

19  on October 23, 2007.  Second, Cook actually did check back in within 60 days of the October 18,

20  2007 phone call.  On November 29, 2007, Cook called Plaintiff "to discuss details of what she is

21  claiming regarding injury" and left a detailed message on Plaintiff's voicemail asking Plaintiff to

22  call "so we can discuss specifics of her claim."  *Id.* at CF0072.  On December 13, 2007, after

23  Plaintiff failed to return her call, Cook called back again and left another "lengthy message that we

24  need to discuss specifics of injuries and treatment providers."  *Id.* at CF0071.  Thus, Cook

25  attempted to check back in with Plaintiff *twice* within 60 days of the October 18, 2007 call.

26  Accordingly, there is no merit to Plaintiff's claim that State Farm misrepresented the nature of its

27  investigatory proceedings, and Plaintiff cannot raise a triable issue of fact on this basis.

28

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

ii.    Decision not to pay additional bills on January 29, 2008

Plaintiff also appears to argue that there is a genuine issue of material fact regarding State Farm's January 29, 2008 decision not to pay additional bills submitted by Plaintiff.[11]  As previously discussed, on January 29, 2008, Claim Representative Kristi Love entered a note in the activity log that stated: "Rev'd: note R & N as well as causation at issue. . . . O.K. to pay current bills – but DO NOT PAY ANY additional bills after this date as we are investigating."  Golden Decl. Ex 11.  Love followed up on this notation by sending a letter to Plaintiff, dated February 4, 2008, which stated that State Farm could not accept or deny further payments at that time because it needed to investigate whether her continued treatment was reasonable, necessary, and caused by the January 19, 2007 accident.  Shea Decl. Ex. F.  The letter explained that State Farm would use Plaintiff's signed Medical Authorization to obtain and review records, requested information on a new provider, and advised Plaintiff that an IME might be required.  *Id.*  Plaintiff argues that the decision to withhold benefits at this time was unreasonable because State Farm had not yet asked Plaintiff to submit to an IME, obtained an expert opinion, or otherwise thoroughly investigated her claim.

While State Farm did not conclusively deny Plaintiff's claim on January 29, 2008, it is true that delay or withholding of benefits may constitute a breach of the implied covenant even if benefits are not formally denied.  *See McCormick v. Sentinel Life Ins. Co.*, 153 Cal. App. 3d 1030, 1048-49, 200 Cal. Rptr. 732 (Cal. Ct. App. 1984).  Nonetheless, an insurer is not required to pay every claim an insured makes, *Wilson*, 42 Cal. 4th at 720, and if it has "good faith doubts" about the basis for an insured's claim, it is "within its rights to investigate" the claim.  *Id.* at 722. Generally, although an insurer may not unreasonably delay or prolong investigation of a claim, it is not required to pay benefits until it has obtained the necessary information and adequately investigated the claim.  *See id.* (insurer would be entitled to investigate the basis for the insured's

---

[11] Plaintiff's primary argument is that State Farm unreasonably closed her claim and cut off benefits on October 23, 2007.  Indeed, Plaintiff contends that "[a]ll facts upon which summary judgment can or should be based end on October 23, 2007."  Mem. of Pts. & Authorities in Opp'n to Def.'s Mot. for Summary Judgment at 10.  However, Plaintiff also references the January 29, 2008 decision as further evidence that State Farm unreasonably withheld benefits without a full investigation.  Accordingly, the Court addresses the January 29, 2008 decision as well.

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

claim through various methods before deciding whether to pay or deny claim); *Globe Indemnity Co. v. Superior Court*, 6 Cal. App. 4th 725, 731, 8 Cal. Rptr. 2d 251 (Cal. Ct. App. 1992) ("There can be no 'unreasonable delay' until the insurer receives adequate information to process the claim and reach an agreement with the insureds."). Accordingly, if State Farm had good faith doubts about its liability for Plaintiff's continued treatments, it was within its rights to delay payment for those treatments while it conducted a reasonable investigation of Plaintiff's claims.

Here, Plaintiff has not raised a genuine issue of fact as to whether State Farm had good faith doubts on January 29, 2008 that justified delay of benefits payments pending its investigation. As discussed above, State Farm provided payments for the treatments Plaintiff received in the six months immediately following the January 19, 2007 accident. *See* Golden Decl. Ex. 10. Bills received by State Farm between February 12, 2007, and August 20, 2007, were promptly paid, despite Plaintiff's delay in providing a signed Authorization for Release of Information. *Id.*; Golden Decl. Ex. 6-8. After a gap in bills received from Plaintiff, State Farm received additional bills in November 2007. *Id.* Ex. 10 at CF2279. At that point, State Farm continued to process Plaintiff's claims and issue payments, but began to question whether the continued treatments were reasonable, necessary, and caused by the 2007 accident. *See* Shea Decl. Ex. C at CF0070 (bill research note stating, "Note [uninsured motorist claim representative] is reviewing treatment with ins'd as well. We have already ptd $ 3100 in MPC. May need IME"). By the end of January 2008, MPC bill researchers and claims representatives had noted that Plaintiff had prior injuries from earlier car accidents, *id.* at CF0069; raised concerns about the amount of payments already made under the policy, *id.* at CF0070; and found reasonableness, necessity, and causation at issue upon review of Plaintiff's claims, *id.* at CF0068. After deciding to withhold future payments pending investigation, State Farm employees promptly began ordering and reviewing Plaintiff's medical records to facilitate investigation of her claim and determine whether an IME would be required. *See id.* at CF0068, CF0066-CF0064.

Plaintiff does not address the argument that her preexisting conditions, the minor nature of the 2007 accident, and her extensive treatment by multiple providers gave State Farm good faith doubts as to its liability for continued treatments. Indeed, Plaintiff's opposition brief stresses State

16

1    Farm's prior knowledge of her serious 2004 accident and the preexisting injuries that resulted from

2    that accident.  *See* Pl.'s Opp'n at 1-3.  Instead Plaintiff argues that it was unreasonable for State

3    Farm to withhold benefits, even temporarily, prior to asking Plaintiff to undergo an IME and while

4    it was investigating her claim.[12]  As noted above, however, an insurer is generally permitted to

5    conduct a reasonable investigation *before* paying out a claim, and if it has "good faith doubts"

6    about the basis for an insured's claim, it is "within its rights to investigate" the claim.  *Wilson*, 42

7    Cal. 4th at 720.  Plaintiff has not cited any authority suggesting that when good faith doubts arise

8    after an insurer has paid some benefits, the insurer must continue to pay out benefits until its

9    investigation of the claim is complete.  Here, given the minor nature of the 2007 accident, the

10   length and extent of treatment for which State Farm had already paid, the unexplained gap in

11   treatment, and Plaintiff's injuries from prior car accidents, it was reasonable for State Farm to

12   initiate investigation of Plaintiff's continued treatment and delay further payments during the

13   investigation.  Moreover, although the IME ultimately determined that some of Plaintiff's injuries

14   required long-term treatment, the IME report confirmed that most of Plaintiff's injuries were of

15   short duration, with acute symptoms lasting only about 12 weeks.  Golden Decl. Ex. 37 at 11-12.

16   This suggests that State Farm's doubts about its liability, though ultimately not entirely correct,

17   were nonetheless reasonable.  Plaintiff has not presented evidence suggesting otherwise.

18   Accordingly, Plaintiff has failed to raise a triable issue of fact regarding the reasonableness of State

19   Farm's January 29, 2008 decision to withhold benefits pending investigation.

20              **iii.    Failure to accommodate Plaintiff's traumatic brain injury**

21        Plaintiff also suggests that State Farm's handling of her claim is unreasonable when one

22   considers Plaintiff's traumatic brain injury.  Plaintiff claims that at least as early as September

23   2007, State Farm had knowledge that Plaintiff's 2004 car accident caused a traumatic brain injury

24   _____

25   [12] It is worth noting that State Farm likely had an obligation to do some preliminary investigation
     before requiring Plaintiff to submit to an IME.  California regulations indicate that an insurer
26   should ask for an IME only when it believes it is reasonably necessary.  *Wilson*, 42 Cal. 4th at 723;
     10 Cal. Code Regs. tit. 10, § 2695.7(n) ("Every insurer requesting a medical examination for the
27   purpose of determining liability under a policy provision shall do so only when the insurer has a
     good faith belief that such an examination is reasonably necessary.").  Thus, State Farm's decision
28   not to immediately request an IME was reasonable.

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    that continues to affect her cognition, including memory, attention, and concentration.  In

2    particular, Plaintiff's condition impairs her ability to organize simple tasks, such as opening her

3    mail.  Pl.'s Dep., Shea Decl. Ex. D, 87:1-16.  Plaintiff argues that the claim file "reflects absolutely

4    no consideration or accommodation given to their insured, whom State Farm knew to have

5    cognitive issues, from [a] prior motor collision which State Farm called a 'pretty decent accident.'"

6    Mem. of Pts. & Authorities in Opp'n to Def.'s Mot. for Summary Judgment at 3.  However, the

7    activity log submitted by Plaintiff establishes that State Farm and Medical Consultant Services

8    attempted to contact Plaintiff many times, both by phone and by mail, throughout the investigation

9    of her claim, and offered her multiple opportunities to submit to an IME, even after she had failed

10   to respond to their requests.  Plaintiff does not state what accommodations should have been made,

11   nor does she point to any authority suggesting that such accommodations would be required.

12   Accordingly, Plaintiff cannot raise a triable issue of fact on this ground.

### iv.    Overlooked bills

14          Finally, Plaintiff argues that State Farm's admission that it failed to pay six bills submitted

15   in 2009 defeats State Farm's "genuine dispute" defense.  Plaintiff argues that, based on this

16   admission, it is clear that her medical payments claim was not properly handled, and State Farm's

17   actions were unreasonable.  As State Farm points out, however, an insurer's honest mistake

18   generally does not give rise to liability for breach of the implied covenant.  *See, e.g.*, *Guebara*, 237

19   F.3d at 995 ("under California law, negligence is not bad faith"); *State Farm Fire & Casualty Co.*

20   *v. Superior Court*, 45 Cal. App. 4th 1093, 1105, 53 Cal. Rptr. 2d 229 (Cal. Ct. App. 1996),

21   *abrogated on other grounds by Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.

22   4th 163, 184-85, 83 Cal. Rptr. 2d 548, 973 P. 2d 527, 541 (1999), (breach of implied covenant

23   claim must "demonstrate[] a failure or refusal to discharge contractual responsibilities, prompted

24   not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate

25   act"); *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 55, 221 Cal. Rptr. 171

26   (Cal. Ct. App. 1985) (concluding that mistaken withholding of benefits does not constitute bad

27   faith).  Here, State Farm has submitted a declaration stating that it mistakenly overlooked bills for

28   six treatments, out of the 170 treatments Plaintiff received during the three-year coverage period.

18

Ortiz Decl. ¶ 7.  Five of these were bills for treatments rendered in April and May of 2007, but submitted by Plaintiff on December 31, 2009, with approximately 82 pages of other documents, including medical records and bills that had already been paid.  *Id.* ¶ 5.  The sixth bill, for treatment rendered on March 12, 2009, was received by State Farm on March 31, 2009, at a time when Moore had still refused to submit to an IME.  *Id.* ¶ 6.  Claim Representative David Ortiz states that these bills were inadvertently overlooked and mistakenly not paid.  *Id.* ¶ 7.

Plaintiff has offered no evidence to suggest that State Farm's delay in paying these bills was anything other than an honest mistake.  Indeed, the only record evidence cited by Plaintiff consists of a call she made to State Farm on February 12, 2008 to complain that she was getting letters regarding unpaid bills.  Pl.'s Opp'n at 14; Shea Decl. Ex. C at CF0067.  Presumably, Plaintiff intends to suggest that this call should have put State Farm on notice that the six overlooked bills were unpaid, and that State Farm may have made a conscious choice not to pay them.  However, State Farm has offered a sworn declaration stating that the six late-paid bills were not submitted for payment until March and December of 2009, long after the February 2008 call.  Ortiz Decl. ¶¶ 5-6.  Plaintiff has not disputed this fact, nor has she put forth any evidence suggesting that she ever advised State Farm that the bills remained unpaid at any time after she submitted them for payment.[13]  There is thus no evidence in the record suggesting that State Farm's failure to pay the six bills was a "conscious and deliberate act," *State Farm Fire & Casualty Co.*, 45 Cal. App. 4th at 1105, and Plaintiff has failed to raise a triable issue of fact as to whether the delayed payment was an honest mistake.  Because an insurer's honest mistake does not constitute a breach of the implied covenant, Plaintiff cannot defeat the motion for summary judgment based on the overlooked bills.

### 3.  Conclusion Regarding Breach of Implied Covenant Claim

The Court has found that State Farm met its initial burden of demonstrating the absence of material facts regarding the reasonableness of its actions and the existence of a genuine dispute as to its liability for Plaintiff's continued treatments.  State Farm made prompt payments for

---

[13] Indeed, the February 12, 2008 claim note that Plaintiff cites also states: "[Plaintiff] said she has not sent bills in quite a while and is out of pocket on a lot of them."  Shea Decl. Ex. C at CF0067.

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  Plaintiff's medical care for approximately one year; undertook reasonable investigation when good

2  faith doubts arose; and denied further coverage based upon a genuine dispute, established through

3  expert opinions, as to its liability for continued treatments.  When Plaintiff agreed to an IME after a

4  year's delay, State Farm reconsidered its prior denial and covered Plaintiff's medical expenses for

5  the full three-year period under the policy.  Plaintiff has failed to raise genuine issues of fact

6  regarding the reasonableness of State Farm's actions or the existence of a genuine dispute as to

7  State Farm's liability for her continued treatments.  Thus, Plaintiff has failed to satisfy her burden

8  to "designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at

9  324.  Accordingly, the Court GRANTS State Farm's motion for summary judgment on Plaintiff's

10  claim for breach of the implied covenant of good faith and fair dealing.

11  **B.  Fraud Claim**

12  Plaintiff's second cause of action asserts a claim of fraud.  In California, the elements of

13  fraud are: (1) misrepresentation; (2) knowledge of falsity (scienter); (3) intent to defraud (i.e.,

14  intent to induce reliance); (4) justifiable reliance; and (5) resulting damage.  *Kearns v. Ford Motor*

15  *Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  In her opposition brief, Plaintiff states that her claim of

16  fraud is based upon evidence in the claim file that Moore was advised that State Farm "will check

17  back in 60 days for status," but five days later State Farm closed her MPC claim.  As explained

18  above, the representation that State Farm would call back in 60 days was made by a representative

19  handling Plaintiff's uninsured motorist claim who did, in fact, call Plaintiff back twice within 60

20  days.  Accordingly, State Farm made no misrepresentation and cannot be liable for fraud on this

21  ground.

22  Plaintiff also appears to argue that State Farm committed fraud by stating in its letter of

23  February 4, 2008 that it would advise Plaintiff of its decision regarding coverage once it completed

24  its investigation.  Plaintiff suggests that because State Farm had already made the decision to close

25  her MPC claim on October 23, 2007, and not to pay any additional bills on January 29, 2008, the

26  representation that it intended to make a decision after investigating was false.  However, as

27  already noted, Plaintiff's claim was reopened on November 21, 2007; there is no evidence of any

28  denials or delays during the closure; and further payments were made after that date.  In addition,

United States District Court
For the Northern District of California

1   although State Farm advised its employees on January 29, 2008 not to pay any additional bills due

2   to the investigation, Plaintiff has produced no evidence suggesting that this represented a final

3   decision that could not be revised based on the investigation results.  To the contrary, when

4   Plaintiff finally submitted to an IME, and the results suggested that benefits were due, State Farm

5   promptly changed course and began paying Plaintiff's medical expenses.  Accordingly, there is no

6   evidence that the statements made in State Farm's February 4, 2008 letter constituted

7   misrepresentations, and State Farm cannot be liable for fraud on this basis.  Because Plaintiff has

8   failed to put forth a viable theory of fraud or submit evidence raising a triable issue of fact

9   regarding State Farm's alleged misrepresentations, the Court GRANTS State Farm's motion for

10  summary judgment as to Plaintiff's fraud claim.

11          **C.  Punitive Damages**

12          Finally, State Farm moves for summary judgment on Plaintiff's claim for punitive damages.

13  Because the Court has found that State Farm is entitled to summary judgment on both of Plaintiff's

14  causes of action, no basis remains for her claim for punitive damages.  Accordingly, the Court

15  GRANTS State Farm's motion for summary judgment on the claim for punitive damages.

16      **IV. Conclusion**

17          For the foregoing reasons, the Court GRANTS summary judgment in favor of State Farm

18  on each of Plaintiff's claims.  The Clerk shall close the file.

19  **IT IS SO ORDERED.**

20

21  Dated: May 2, 2011                                _____
                                                       LUCY H. KOH
22                                                     United States District Judge

23

24

25

26

27

28

Case No.: 10-CV-01534-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT